Filed 5/7/15  Establishment of Press-Enterprise as Newspaper etc. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re Establishment of The Press-Enterprise as a Newspaper of General Circulation

ANITA DAVIS,

      Petitioner and Respondent,

v.

SENTINEL WEEKLY NEWS,

      Contestant and Appellant.

E059744

(Super.Ct.No. RIC1305730)

OPINION

APPEAL from the Superior Court of Riverside County.  John V. Stroud, Judge. (Retired judge of the Sacramento Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed.

Kirby Noonan Lance & Hoge and Michael L. Kirby for Contestant and Appellant.

Best Best & Krieger, Kira L. Klatchko, Kendall H. MacVey and Irene S. Zurko for Petitioner and Respondent.

1

Some notices, such as foreclosure notices, are required by law to be published in "a newspaper of general circulation." (Gov. Code, § 6040;[1] *Press Democrat v. Sonoma County Herald Recorder* (2012) 207 Cal.App.4th 578, 580 (*Press Democrat*).) A "newspaper of general circulation" is defined as "a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, which has a bona fide subscription list of paying subscribers, and has been established, printed and published at regular intervals in the State, county, or city where publication, notice by publication, or official advertising is to be given or made for at least one year preceding the date of the publication, notice or advertisement. (§ 6000.)

There is an exception to the requirement that a newspaper must be printed in the place of publication. (§ 6006.) If, prior to 1923, a newspaper was an established newspaper of general circulation—meeting the requirements that were in place at that time—then it is exempt from the printing/location requirement set forth in general rule (§ 6000). (§ 6006; *Press Democrat*, *supra*, 207 Cal.App.4th at p. 580.)

Anita Davis, advertising director of the Press-Enterprise newspaper, petitioned the trial court for a judgment establishing the Press-Enterprise as a newspaper of general circulation for the City of Perris (Perris).[2] For ease of reference, we will refer to the petitioner as "Press-Enterprise." Press-Enterprise's newspaper is not printed in Perris,

---

[1] All subsequent statutory references will be to the Government Code unless otherwise indicated.

[2] The original petitioner in the case was Jeannie Goodman, who was employed as a manager of the Press Enterprise's newspaper. This court granted a substitution of party, replacing Jeannie Goodman with Anita Davis as petitioner and respondent.

and therefore, Press-Enterprise relied upon the exception in section 6006 when making its argument. The trial court adjudged the Press-Enterprise to be a newspaper of general circulation for Perris. Sentinel Weekly News (Sentinel) contends the trial court erred because Press-Enterprise's newspaper did not qualify for the section 6006 exemption. We reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A. <u>PETITION</u>

On May 14, 2013, Press-Enterprise petitioned the trial court for a judgment establishing Press-Enterprise's newspaper as a newspaper of general circulation for Perris. Press-Enterprise provided a memorandum of points and authorities in support of its petition. In the memorandum, relying on the section 6006 exemption, Press-Enterprise asserted its newspaper is a newspaper of general circulation because it has been published in Riverside County (the County) since 1878, disseminating local or telegraphic news of general character, on a regular basis (six days per week), with a bona fide list of subscribers in the County.

Perris incorporated as a city in 1911. Press-Enterprise reasoned that since it was a newspaper of general circulation for the County, while the area that became Perris was an unincorporated part the County, Press-Enterprise's newspaper remained a newspaper of general circulation for Perris after Perris incorporated. In other words, the incorporation of the city did not change Press-Enterprise's status as a newspaper of general circulation for the area that became Perris.

Press-Enterprise presented a secondary argument as well. In the secondary argument, Press-Enterprise asserted that *after* Perris incorporated, but prior to 1923, Press-Enterprise's newspaper became a newspaper of general circulation within Perris because (1) it was published six days per week, (2) disseminated local or telegraphic news of a general character, and (3) circulated to a bona fide list of 35 subscribers in Perris.

B.    OPPOSITION

Sentinel, which has offices in Perris, opposed Press-Enterprise's petition. Sentinel asserted Press-Enterprise failed to meet the exception in section 6006 "with respect to the printing requirement." Specifically, Sentinel asserted Press-Enterprise failed to allege Press-Enterprise's newspaper "has ever been printed in the City of Perris."

C.    REPLY

Press-Enterprise replied to Sentinel's opposition. Press-Enterprise again raised its two arguments. First, Press-Enterprise asserted its newspaper automatically became a newspaper of general circulation for Perris, when the city incorporated, because the newspaper had been a newspaper of general circulation for the County when the area that became Perris was an unincorporated part of the County. Second, Press-Enterprise argued its newspaper became a newspaper of general circulation for Perris after Perris incorporated, but prior to 1923, because (1) it was published six days per week, (2) disseminated local or telegraphic news of a general character, and (3) had a bona fide list of Perris subscribers in 1923.

4

D.    OPENING BRIEF

In the trial court, Press-Enterprise filed an opening brief in support of its petition. Press-Enterprise again raised the two arguments presented *ante*. Additionally, Press-Enterprise provided "legal notices" that were printed in its newspapers in 1914 and 1917. The two notices concern trustees' sales. The notice from 1914 reflects an auction was scheduled to take place in the City of Los Angeles for real property situated within the Perris Irrigation District. The 1917 notice provided an auction would take place in the City of Riverside for real property located in the Perris Irrigation District.

Press-Enterprise asserted that, when the 1914 and 1917 notices were published, Code of Civil Procedure section 692 "required publication of notice in the 'city or township, in which the property is situated.'" Press-Enterprise provided a copy of a 1907 amendment to section 692 of the Code of Civil Procedure which provided the statute would read, "Before the sale of property on execution, notice thereof must be given as follows:  [¶]  . . .  [¶]  3. In case of real property:  by posting a similar notice, particularly describing the property, for twenty days, in three public places of the township or city where the property is situated, and also where the property is to be sold, and publishing a copy thereof, once a week for the same period, in some newspaper of general circulation, printed and published in the city or township, in which the property is situated, if there be one, or, in case no newspaper of general circulation be printed and published in the city or township, in some newspaper of general circulation, printed and published in the county." Press-Enterprise reasoned the 1914 and 1917 notices, combined with the 1907 amendment to the Code of Civil

5

Procedure, established its newspaper was a newspaper of general circulation for Perris prior to 1923.

E.    SUPPLEMENTAL OPPOSITION AND REPLY BRIEF

Sentinel filed a supplemental opposition.  In the opposition, Sentinel again faulted Press-Enterprise for failing to allege Press-Enterprise's newspaper is published in Perris.  Sentinel asserted the law does not provide for an automatic-qualification rule wherein a newspaper of general circulation for a county automatically becomes a newspaper of general circulation for a newly incorporated city in said county.

Sentinel also filed a reply brief in the trial court.  In the reply brief, Sentinel argued the 1914 and 1917 notices provided by Press-Enterprise do not mention the City of Perris; rather, they mention the Perris Irrigation District within the County.  Sentinel asserted nothing indicated the notices concerned property located within the City of Perris.  Sentinel further argued the auctions were scheduled to occur in Los Angeles and the City of Riverside, which means the auction locations were also not related to the City of Perris.

In regard to the 1907 amendment to the Code of Civil Procedure section 692, Sentinel emphasized the following language from the amended statute, "'newspaper of general circulation, printed or published in the city or township, in which the property is situated, if there be one.'"  Sentinel asserted the notices did not reflect Press-Enterprise's newspaper was a newspaper of general circulation for the City of Perris because the notices were not related to the City of Perris.

6

F.    SUPPLEMENTAL DECLARATION

On July 24, 2013, the day before the trial court's hearing in the case, Press-Enterprise submitted a supplemental declaration with four exhibits attached. Exhibit A is a document reflecting that, in 1922, 39 people within Perris subscribed to Press-Enterprise's newspaper.

Exhibit B is a notice from the November 29, 1913, edition of Press-Enterprise's newspaper. The notice concerns a special election as to whether the Riverside County Board of Supervisors should issue bonds to construct public highways. The highways would be constructed throughout the County, such as from Perris to Elsinore and Whitewater to Indio. The notice listed polling places throughout the County, such as Riverside, Perris, Temecula, and Indio.

Exhibit C is a notice from an August 23, 1918, edition of Press-Enterprise's newspaper. The notice is a summons for a case brought in the Riverside County Superior Court involving a corporation suing the City of Perris and John Jefferson. The notice directs the City of Perris and John Jefferson to appear and answer an amended complaint in the case.

Exhibit D is a notice from a June 3, 1916, edition of Press-Enterprise's newspaper. The notice is a list of people whose taxes are delinquent. The list is organized by city, and then contains an alphabetical list of people's names under each city's name. So for example, the City of Beaumont has an alphabetical list of names underneath it. The cities included in the notice are San Jacinto, Elsinore, Hemet, Perris, and Beaumont.

7

G.     HEARING

On July 25, 2013, the trial court held a hearing in the case.  The court announced that its tentative decision was to grant the petition pursuant to section 6006.  The court explained that it believed Press-Enterprise proved it was a newspaper of general circulation for Perris prior to 1923.  The trial court did not explain its reasons as to why it believed the Press-Enterprise provided sufficient evidence.

Sentinel asserted there was no law providing a newspaper of general circulation for a county automatically becomes a newspaper of general circulation for a newly incorporated city.  Sentinel also argued the two newspaper notices Press-Enterprise provided concerning property in the Perris Irrigation District were not the type that were required to be published in a newspaper of general circulation for the City of Perris.

Press-Enterprise argued that it presented sufficient evidence.  Press-Enterprise asserted it provided evidence of newspaper subscribers in Perris prior to 1923, that the newspaper included news of a general character, and that it was regularly published.  Press-Enterprise further explained that, the day before the hearing, it had provided three more "legal notices that were published in the city of Perris other than the ones involving the Perris Irrigation District."  Press-Enterprise argued, "That's the frosting on the cake, your Honor.  We have met the requirements under 6006."

In response, Sentinel asserted, "[T]here's no legal notices that were required legal notices for the city . . . ."  The court said, "All right.  The Court's going to confirm the tentative."

8

# DISCUSSION

### A.     OVERVIEW OF THE LAW

"The Government Code provides that whenever any official advertising, notice, resolution, order, or other matter is required by law to be published in a newspaper, such publication shall be made only in a 'newspaper of general circulation' (§ 6040), and that term is defined in section 6000 as a newspaper for the dissemination of news and intelligence of a general character which has a bona fide subscription list of paying subscribers and has been 'established, printed and published' at regular intervals for at least one year preceding publication in the state, county, or city where the publication is to be made.  The word 'established' is defined as referring to a newspaper which has been in existence under a specified name for the whole of the one-year period. (§ 6002.)  Until 1923 a newspaper could qualify as 'printed and published' within the meaning of the predecessor of section 6000 even though the physical act of printing was not performed in the place where the paper was to appear [citation], but in that year the Legislature adopted provisions, still in effect, defining 'printed' and 'published' in such manner that a newspaper could not be deemed one of general circulation for an area unless 50 percent of the mechanical work of typesetting and impressing type on paper was completed there.  (§§ 6003, 6004.)"  (*In re Norwalk Call* (1964) 62 Cal.2d 185, 186-187.)

In 1923, the Legislature enacted section 6006, which is the provision at issue in this case.  (*In re Norwalk Call*, *supra*, 62 Cal.2d at p. 187.)  Section 6006 provides, "Nothing in this chapter alters the standing of any newspaper which, prior to the

9

passage of Chapter 258 of the Statutes of 1923, was an established newspaper of general circulation, irrespective of whether it was printed in the place where it was published for a period of one year as required.'" Therefore, if "a newspaper met all the requirements to qualify as an established newspaper of general circulation before 1923 and has continued to meet all the standards in force at that time," then it may rely on the exception in section 6006 concerning printing location. (*In re Norwalk Call*, at p. 189.)

Prior to 1923, the law provided, "'A newspaper of general circulation is a newspaper published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement.'" (*In re McDonald* (1921) 187 Cal. 158, 159 (*McDonald*).)

In 1921, the Supreme Court considered whether a newspaper, the "'Ontario Weekly Herald'" was a newspaper of general circulation for Ontario, when the offices for the newspaper were in Ontario, Ontario was the newspaper's principal place of circulation, and a city license to conduct the newspaper's business was paid to the City of Ontario, but the newspaper was physically printed in Colton. The Supreme Court framed the issue as "whether the fact that the physical printing of the paper is done in one town, and the publication and circulation in another, prevents it from being a

10

newspaper of general circulation within the meaning of the statute." (*McDonald*, *supra*, 187 Cal. at p. 159.)

The Supreme Court explained that the purpose of the law is to define the term "newspaper" in a manner that would allow important notices to reach the community affected by the information in the notices. (*McDonald*, *supra*, 187 Cal.2d at pp. 159-160.) The court explained that since the newspaper's offices were in Ontario and its taxes were paid in Ontario, the newspaper was "caused to be printed in Ontario," published in Ontario, and circulated in Ontario. The court reasoned that production of the newspaper was done in Ontario, "save the setting up of the type and making the impressions on the paper." (*Id.* at p. 161.) The court determined that limiting the definition of "printed" to setting type and impressing words on paper would be too strict of a limit. Therefore, "[t]he only reasonable construction that can be given to 'printed and published' is that the paper must be produced in the community where it is aimed to have it recognized as a legal advertising medium." (*Id.* at p. 161.)

Thus, the section 6006 exception protects newspapers such as the Ontario Weekly Herald. For example, prior to 1923, a newspaper such as the Ontario Weekly Herald could be a newspaper of general circulation in Ontario even though it was printed in Colton because all the other aspects of the newspaper's production occurred in Ontario. Upon passage of the 1923 law requiring printing to take place in the relevant city, the Ontario Weekly Herald could have lost its status as a newspaper of general circulation for Ontario, if not for the section 6006 exception for newspapers

11

established as newspapers of general circulation prior to 1923. Due to that exception, the Ontario Weekly Herald could remain a newspaper of general circulation for Ontario.

Section 6006 also protects newspapers that had a connection to a particular area, e.g. printing or producing the newspaper in the city, but have relocated. As an example, the section 6006 exception applies wherein a newspaper was printed in Anaheim prior to 1923, but then moved its printing operations to the City of Orange after 1923. Although the newspaper is no longer printed in Anaheim, under the section 6006 exception, since it was a newspaper of general circulation in Anaheim prior to 1923, it can continue to be a newspaper of general circulation in Anaheim, even though it is now printed in the City of Orange. (*In re Anaheim Daily Gazette* (1963) 214 Cal.App.2d 438, 440-441, 444-445.)

At oral argument in this court, the Press-Enterprise repeatedly cited to the case of *In re Byers* (1933) 219 Cal.446 (*Byers*). In *Byers*, a newspaper, the "Peninsula News," had, in 1915, been adjudicated a newspaper of general circulation for the City of San Bruno. At that time (1915) the newspaper was printed and published in the City of San Bruno. The "Peninsula News" later consolidated with the "San Bruno Herald." The newspaper was then published as the consolidated "San Bruno Herald and Peninsula News." (*Byers*, at p. 447.)

In 1931, E.E. Bramble petitioned the trial court to vacate the 1915 adjudication on the ground that for one year prior to the filing of the petition, the mechanical work of printing of the newspaper had not been done in the City of San Bruno. The proprietors of the "San Bruno Herald and Peninsula News" conceded the mechanical work of

12

printing the merged newspaper was not conducted in San Bruno. Bramble lost in the trial court. (*Byers*, *supra*, 219 Cal. at pp. 447-448.)

The Supreme Court noted that prior to 1923, in *McDonald*, *supra*, the court had held "a newspaper was printed and published in a city or locality if it was issued and circulated there, although the mechanical work of producing the paper was done in some other city or locality." The court also explained the Legislature changed the law in 1923 so that "printed" came to mean "that the mechanical work of producing a newspaper of general circulation shall be performed at the place of its issue and circulation." (*Byers*, *supra*, 219 Cal. at pp. 448-449.)

At the Supreme Court, Bramble argued that the "San Bruno Herald and Peninsula News" lost its standing as a newspaper of general circulation because it did not meet the legal requirements to be a newspaper of general circulation. (*Byers*, *supra*, 219 Cal. at p. 449.) The Supreme Court found Bramble's argument to be unpersuasive because the Legislature had passed a law providing, "'Nothing in this title shall be construed to alter the standing of any newspaper which, prior to the passage of this act, was an established newspaper of general circulation, irrespective of whether it has been printed in the place where it is published for a period of one year . . . .'" (*Ibid.*) The Supreme Court explained that newspapers already established as newspapers of general circulation prior to 1923 were unaffected by the 1923 change in the law requiring printing to take place in the city relevant to the legal notices. (*Id.* at pp. 449-450.) Since the "Peninsula News" had already been adjudicated a newspaper of general

13

circulation, it was unaffected by the 1923 change in the law. The Supreme Court affirmed the trial court's denial of Bramble's petition. (*Id.* at p. 451.)

As set forth *ante,* the exception at issue (§ 6006) requires the newspaper be an established newspaper of general circulation prior to 1923. The exception allows a newspaper that is no longer printed in city X to still be a newspaper of general circulation for city X, so long as it was a newspaper of general circulation for city X prior to 1923. In order to be a newspaper of general circulation prior to 1923, a newspaper must show it: (1) disseminated local or telegraphic news and intelligence of a general character; (2) had a bona fide subscription list of paying subscribers; and (3) was "established, printed and published" in the city where legal notices are desired to be given for at least one year. (*McDonald*, *supra*, 187 Cal. at p. 159.) Under *McDonald* and *Byers*, the requirement of "established, printed and published" means at some point prior to 1923 the newspaper was printed or in some manner produced in the city at issue. (*McDonald*, at p. 161 [newspaper's office in relevant city]; *Byers*, *supra*, 219 Cal. at pp. 447, 449-450 [predecessor newspaper printed in relevant city in 1915].)

B.     SECTION 6006

Under section 6006, the question is whether Press-Enterprise's newspaper "was, prior to 1923, a newspaper established, printed and published at regular intervals in [Perris] at that time." (*In re Anaheim Daily Gazette*, *supra*, 214 Cal.App.2d at p. 441.) Press-Enterprise asserts we should apply the substantial evidence standard of review because this case involves "competing inferences drawn from the evidence." For the sake of judicial efficiency, rather than analyze if the evidence is truly being disputed, we

14

will apply the substantial evidence standard.  (See *Taxpayers for Livable Communities v. City of Malibu* (2005) 126 Cal.App.4th 1123, 1126 [de novo standard applies to undisputed facts, substantial evidence standard applies to disputed facts].)

Thus, the issue is whether there is substantial evidence Press-Enterprise's newspaper was printed or otherwise produced in Perris prior to 1923.  (*In re Anaheim Daily Gazette*, *supra*, 214 Cal.App.2d at p. 441.)  The evidence reflects the newspaper was circulated in Perris.  However, the law requires more than circulation; there must be an aspect of production of the newspaper in the relevant city.  (*McDonald*, *supra*, 187 Cal. at p. 161 ["paper must be produced in the community"].)  There is no evidence that the newspaper was produced in Perris prior to 1923.  As a result, Press-Enterprise has not met the plain requirements of section 6006 because substantial evidence does not reflect the newspaper was printed or otherwise produced in Perris prior to 1923.

C.    AUTOMATIC QUALIFICATION

Press-Enterprise contends its newspaper is a newspaper of general circulation in Perris because it automatically qualified as such when Perris incorporated.  Press-Enterprise asserts its newspaper met the requirements of a newspaper of general circulation for the *County* prior to 1911, so when Perris incorporated in 1911, the newspaper automatically became a newspaper of general circulation for the newly incorporated city because the change in the city's incorporation status would not have changed the newspaper's status.

We apply the de novo standard of review because this issue centers on an interpretation of the law.  (*Automotive Funding Group, Inc. v. Garamendi* (2003) 114 Cal.App.4th 846, 851.)

*In re Norwalk Call* concerns a newspaper known as "Norwalk Call" which, in the 1960s, petitioned to be declared a newspaper of general circulation in the City of Norwalk.  (*In re Norwalk Call*, *supra*, 62 Cal.2d at pp. 186, 188.)  It was undisputed that, prior to 1923, the newspaper's company "conducted its operations in the township of Norwalk, then unincorporated, in a manner entitling it to be a newspaper of general circulation under the law then existing."  (*Id*. at p. 187.)  Norwalk Call asserted it did not meet the printing/location requirement under the general rule (§ 6000), so it necessarily relied on the section 6006 exception.  (*Norwalk Call*, at p. 187.)

The party opposing the petition asserted the Norwalk Call could not be a newspaper of general circulation in the City of Norwalk based upon the section 6006 exception because the City of Norwalk was not incorporated until after 1923.  (*In re Norwalk Call*, *supra*, 62 Cal.2d at pp. 189-190.)  The Supreme Court explained that the purpose of having newspapers meet certain criteria is to ensure that the published notices come to the attention of a substantial number of people that may be in the affected area.  Therefore, "changes in the political structure or names of governmental entities within [the] area," e.g., from unincorporated to incorporated, is irrelevant if the newspaper "has been an established one of general circulation for a given territorial area."  (*Ibid.*)  A divided Supreme Court affirmed the ruling establishing Norwalk Call

16

as a newspaper of general circulation for the City of Norwalk; three justices dissented and would have reversed the judgment. (*Id.* at pp. 186, 190, 193.)

Press-Enterprise asserts that, under *In re Norwalk Call*, since Press-Enterprise's newspaper was a newspaper of general circulation for the County prior to 1911, and the County included the unincorporated area that later became Perris, when Perris incorporated in 1911, the newspaper automatically became a newspaper of general circulation for the newly incorporated city. Press-Enterprise has read *In re Norwalk Call* too broadly. *In re Norwalk Call* does not create an "automatic qualification" rule for any city incorporated in a county after the newspaper establishes itself as a newspaper of general circulation for the county. Rather, *In re Norwalk Call* explains that if, prior to 1923, a newspaper operated in an unincorporated area of a county and circulated in that area, and then that area incorporates as a city and the newspaper is still circulated in that original area, the newspaper can still be a newspaper of general circulation for that newly incorporated area. The primary point being, prior to 1923, the newspaper operations took place in the unincorporated area that became the city. For example, prior to 1923, Norwalk Call "conducted its operations in the township of Norwalk, then unincorporated," and later sought to be a newspaper of general circulation in the incorporated city of Norwalk. (*In re Norwalk Call*, *supra,* 62 Cal.2d at pp. 186-187.)

In sum, *In re Norwalk Call* does not create the rule posited by Press-Enterprise— there is not an "automatic qualification" rule. Under *In re Norwalk Call*, Press-

17

Enterprise would need to show that it operated the newspaper in the unincorporated area that became Perris. (*In re Norwalk Call*, *supra*, 62 Cal.2d at pp. 187, 189-190.)

We now apply the substantial evidence standard in determining whether Press-Enterprise sufficiently established it operated the newspaper in the unincorporated area that became Perris. (See *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 [substantial evidence standard applies to factual issues].) Press-Enterprise provides evidence that it circulated the newspaper in Perris and published notices that mentioned Perris, but does not provide evidence that it printed or produced the newspaper in Perris. Since *In re Norwalk Call* retains the production/location requirement, we find Press-Enterprise's argument to be unpersuasive because it has not shown a production connection with Perris.

Further, when Perris incorporated, presuming the Press-Enterprise's newspaper was the sole newspaper in the area, Perris residents could have still had means of publishing legal notices. For example, the law provides that if there is no newspaper of general circulation for a city, then a legal notice may be published "in some other newspaper of general circulation published in the same county, if there is one, and if there is none, or if publication in such newspaper is refused, then, in lieu thereof, in some other newspaper of general circulation published in an adjacent county or in such other newspaper as the court shall direct." (§ 6021, subd. (b).) Thus, Perris residents presumably could have still published legal notices in a newspaper of general circulation for the County, if there was not a newspaper of general circulation specifically for the newly incorporated Perris.

D.     PUBLISHED NOTICES

The case *Press Democrat* concerns a newspaper known as the "Sonoma County Herald Recorder" (Herald Recorder).  (*Press Democrat*, *supra*, 207 Cal.App.4th at p. 580.)  In 1953, the Herald Recorder was adjudicated a newspaper of general circulation for Santa Rosa in Sonoma County.  In 2010, a competing newspaper, the "Press Democrat," moved to vacate the Herald Recorder's adjudication.  (*Ibid.*)  The Press Democrat argued the Herald Recorder was no longer a newspaper of general circulation, in part, because the Herald Recorder is printed in Los Angeles.  (*Id.* at pp. 581-582.)  The Herald Recorder, citing section 6006, asserted it was not required to be printed in the City of Santa Rosa because it was a newspaper of general circulation prior to 1923.  (*Press Democrat*, at p. 582.)

As evidence that the Herald Recorder met the requirements of section 6006, the newspaper's publisher declared the Herald Recorder was established in 1899 and published five days per week.  The publisher also provided a March 24, 1906, edition of the newspaper containing a school bond election notice, which the publisher declared "'appear[ed] to be a legal notice.'"  The publisher also provided a May 30, 1949, edition of the newspaper, which contained three pages of legal notices, such as notices of trustee sales and notices to creditors.  (*Press Democrat*, *supra*, 207 Cal.App.4th at p. 583.)  The Press Democrat argued the Herald Recorder did not show it was an established newspaper of general circulation prior to 1923 because it did not demonstrate that it was printing legal notices prior to 1923.  (*Ibid.*)  The Press Democrat asserted the 1906 school bond notice was not a legal notice because such notices could

19

be printed in any newspaper in the county—the law did not require such notices to be printed in a newspaper of general circulation. (*Id.* at pp. 584-585.) The trial court denied the Press Democrat's motion to vacate. (*Id.* at p. 585.)

The appellate court reversed the judgment. (*Press Democrat*, *supra*, 207 Cal.App.4th at p. 590.) The court explained the Herald Recorder bore the burden of proving it came within section 6006. (*Press Democrat*, at pp. 586-587.) The appellate court concluded the Herald Recorder failed to meet its burden because it did not demonstrate the 1906 school bond notice "was a 'legal notice' required to be published in a newspaper of general circulation." (*Id.* at p. 588.) Therefore, the appellate court concluded the Herald Recorder provided no evidence that it published legal notices before 1923. (*Ibid.*) The appellate court wrote, "In the absence of any evidence that it published legal notices before 1923, the Herald Recorder failed to satisfy the requirements of section 6006 because it did not establish it published "'local or telegraphic news and intelligence of a general character'" before 1923 or that it had a bona fide subscription list of paying subscribers in 1923." (*Ibid.*) The appellate court held the Herald Recorder's adjudication as a newspaper of general circulation in Santa Rosa and Sonoma County must be vacated because the newspaper is printed in Los Angeles. (*Id.* at pp. 582, 588.)

Press-Enterprise provided sections from its newspapers dated 1913, 1914, 1916, 1917, and 1918 (collectively "the five notices"). The 1914 and 1917 notices concern trustees' sales for properties situated in the Perris Irrigation District. The 1913 notice concerns a special election addressing whether the Riverside County Board of

20

Supervisors should issue bonds to construct public highways. The highways would be constructed throughout the County such as from Perris to Elsinore and Whitewater to Indio. The notice listed polling places throughout the County, such as Riverside, Perris, Temecula, and Indio.

The 1916 notice reflects a list of people whose taxes were delinquent. The list is organized by city, and then contains an alphabetical list of people's names under each city's name. So for example, City of Beaumont has an alphabetical list of names underneath it. The cities included in the notice are San Jacinto, Elsinore, Hemet, Perris, and Beaumont. The 1918 notice is a summons for a case brought in the Riverside County Superior Court, involving a corporation suing the City of Perris and John Jefferson. The notice directs the City of Perris and John Jefferson to appear and answer an amended complaint in the case.

In the body of Press-Enterprise's discussion, it does not describe the five notices as legal notices required to be published in a newspaper of general circulation. Rather, Press-Enterprise asserts the five notices demonstrate the newspaper was publishing "multiple notices affecting, or of interest to, Perris residents." So, it would appear Press-Enterprise is not asserting the five notices are legal notices establishing the Press-Enterprise must have, ipso facto, been a newspaper of general circulation in Perris prior to 1923. In other words, Press-Enterprise is *not* asserting (1) the five notices are legal notices required to be published in a newspaper of general circulation, such that the five notice would ipso facto prove the newspaper must have been a newspaper of general

21

circulation in Perris prior to 1923; rather, Press-Enterprise is contending (2) the five notices prove the newspaper was disseminating general information relevant to Perris.[3]

Press-Enterprise is still omitting the primary issue in this case—there is nothing indicating the newspaper was produced in Perris prior to 1923. If everything Press-Enterprise asserts is true and correct—it had subscribers residing in Perris, it was published six days per week, and it provided general news relevant to Perris as proven by the five notices—it is still missing a key component, i.e., the location/production requirement.

As explained *ante*, in order to satisfy the section 6006 requirements, a newspaper must have been "an established newspaper of general circulation" prior to 1923. (§ 6006.) That means the newspaper must have been "published for the dissemination of local or telegraphic news and intelligence of a general character, having a bona fide subscription list of paying subscribers, and which shall have been established, printed and published at regular intervals, in the state, county, city, city and county, or town, where such publication, notice by publication, or official advertising is given or made, for at least one year preceding the date of such publication, notice or advertisement.'" (*McDonald*, *supra*, 187 Cal. at p. 159.) If the newspaper was not printed in the relevant

---

[3] We are not presenting the printing of legal notices as an element required to be proved in order for a newspaper to establish it is a newspaper of general circulation. Rather, the Press-Enterprise has presented legal notices, and we considered whether the Press Enterprise may be asserting the notices prove the Press-Enterprise must have, ipso facto, been a newspaper of general circulation because it was printing these notices. In other words, if the required elements cannot be shown, then perhaps proof of legal notices will suffice as alternate proof of establishing a newspaper is a newspaper of general circulation.

city, then the "printing" requirement can be satisfied by proof of producing the newspaper in the relevant city, such as by proof that the newspaper's offices are in the relevant city. (*Id.* at pp. 161-162.) Since Press-Enterprise is missing proof for the pre-1923 "established, printed and published" requirement, we conclude the section 6006 exception does not apply.[4]

## DISPOSITION

The judgment is reversed. The trial court is directed to enter an order denying Press-Enterprise's petition. Sentinel Weekly News is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

KING
J.

---

[4] In the age of online news, we question whether it is pragmatic for the Legislature to retain such a specific production/location requirement. The means by which people receive community news has changed greatly from 1923 to 2015, from printed newspapers to online sources. Additionally, people are no longer tied to their cities as they once were, often crossing through a variety of cities everyday on their travels to work or other events. While we analyze the 1923 statute, we question whether it may be time for the Legislature to revisit this statutory scheme in light of how much change has occurred since 1923.

23